FILED
United States Court of Appeals
Tenth Circuit

August 17, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSHUA PRICE, JR.,

     Defendant - Appellant.

No. 21-7050

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:98-CR-00010-RAW-1)**

_____

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Northern District of Oklahoma, Tulsa, Oklahoma, for Defendant-Appellant.

Linda A. Epperley, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **ROSSMAN**, Circuit Judges.

_____

**TYMKOVICH**, Chief Judge.

_____

Joshua Price Jr. appeals the district court's dismissal of his motion for a sentence reduction pursuant to the First Step Act of 2018. Under the First Step Act, a district court may reduce a prisoner's sentence if the prisoner was

convicted of an offense covered by the Fair Sentencing Act, a 2010 law that changed the sentencing provisions for certain drug offenses. The parties agree that Mr. Price is eligible for a sentence modification because he was convicted of a covered offense: distribution of cocaine base under 21 U.S.C. § 841. But the parties disagree about whether Mr. Price has standing to request a First Step Act sentence modification.

In 1998, the sentencing court determined Mr. Price's sentence length by applying a cross reference for first-degree murder under the then-mandatory United States Sentencing Guidelines. The resulting life sentence exceeded the Sentencing Guideline calculation for his cocaine and firearms offenses. This cross reference used the Guideline calculations from a non-covered offense, murder, but the enhancement derives from Mr. Price's covered conviction for drug distribution. Our precedent says that if the length of a prisoner's sentence is determined by a concurrent non-covered offense, and that sentence exceeds the length of the covered offense, then the prisoner does not have constitutional standing for a sentence modification. The question presented is whether the district court may now modify Mr. Price's sentence in light of the First Step Act.

We conclude that the district court has discretion to reduce Mr. Price's overall sentence. Mr. Price was convicted of violating a covered offense and was sentenced to life by a Guideline cross-reference to a non-covered offense. But Mr. Price was not convicted of murder; that crime only increased his sentence for the cocaine offenses. Since Mr. Price's sentence was entirely driven by the drug

offenses, he is eligible for a sentence modification.  And nothing prevents the district court from reviewing the murder cross reference in considering his sentence under the now-advisory Sentencing Guidelines.  Since no statutory mandatory minimum applies for the murder cross reference, during sentence modification the court is entitled to apply the traditional sentencing factors under 18 U.S.C. § 3553(a).

In sum, because a sentence reduction is possible, we find that Mr. Price has standing for a sentence modification under the First Step Act.  We therefore reverse the district court and remand for further proceedings.

## I.  Background

In the summer of 1997, a law enforcement task force investigated cocaine trafficking in the Muskogee, Oklahoma area.  The task force worked with an informant, Ebon Sekou Lurks, to gather information about Mr. Price, an alleged drug dealer.  Mr. Price learned that Lurks was an informant and one week later Lurks was murdered.  Law enforcement suspected that Mr. Price was involved in the murder, and when they searched Mr. Price's residence they found Mr. Price, a gun belonging to Mr. Price, and Mr. Price's bloodstained tennis shoes.  DNA testing indicated there was a high probability that the blood on Mr. Price's tennis shoes belonged to Lurks.

In 1998, Mr. Price was charged with 21 counts of drug and firearm-related crimes.  But he was not charged with Lurks's murder.  Before trial, the district court decided to admit recorded statements that Lurks made to law enforcement

3

because Mr. Price was "directly involved in the execution of . . . Lurks" as shown by "[c]lear and convincing evidence." Thus, the district court held that "the statements made by Lurks should be admitted into evidence as [Mr. Price has] waived [his] confrontation rights by causing the unavailability of Lurks." At trial, a jury convicted Mr. Price of all counts.

After trial, the government prepared a presentence report (PSR), which grouped Mr. Price's convictions into two categories: the drug offenses and the firearm offenses. The PSR calculated an adjusted offense level of 42 for the drug offenses and 22 for the firearm offenses.

The PSR also included a cross reference to first-degree murder because evidence showed that Mr. Price killed Lurks.[1] The cross reference to first-degree murder came from U.S.S.G. § 2D1.1, which advises:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

*Id.* § 2D1.1 (d)(1). Under § 2A1.1, the Guideline commentary recommended a sentence of life imprisonment for murder unless the government moved for a

---

[1] A cross reference is similar to a sentencing enhancement. It is an instruction to apply another offense guideline if the district court finds the necessary facts by a preponderance of the evidence. *See* U.S.S.G. § 1B1.5 (explaining cross references); *United States v. Robertson*, 946 F.3d 1168, 1171 (10th Cir. 2020) (discussing burden of proof for sentencing enhancements).

4

downward departure based on the defendant's substantial assistance. *See id.* cmt. n.2(A). Since Mr. Price had not assisted the government, the PSR calculated an adjusted offense level of 46 for the murder cross-reference and recommended a sentence of life in prison.

The district court found by a preponderance of the evidence that Mr. Price murdered Lurks. *See* 18 U.S.C. § 1111 (defining murder as "unlawful killing of a human being with malice aforethought"). Thus, the court applied the cross reference for first-degree murder as recommended by the PSR. *See* U.S.S.G. § 2A1.1. Using the 1998 Sentencing Guidelines Manual, the district court sentenced Mr. Price to

- life for his conviction on one count of conspiracy to distribute cocaine;

- life for each of his six convictions for distributing cocaine (including the murder cross-reference);

- 48 months for each of his twelve convictions for the use of a communication facility in committing a felony; and

- 120 months for each of his two convictions for firearms possession.

All sentences run concurrently. At the time of Mr. Price's sentencing, the Guidelines were mandatory and the district court had no discretion to vary below a life sentence for the murder cross reference.

On direct appeal in 2001, we found that Mr. Price's life sentences for the drug charges under 21 U.S.C. § 841(b)(1)(A) were plainly erroneous because the

5

drug quantity had not been submitted to the jury. *See United States v. Price*, 265 F.3d 1097, 1108 (10th Cir. 2001). We concluded that Mr. Price "should have been sentenced under § 841(b)(1)(C), which provides for a maximum sentence of twenty years for each of [his] seven narcotics convictions." *Id.* But we also held that Mr. Price did not require relief because the district court would be required to run the drug conviction sentences consecutively, which had the practical effect of a life sentence. *Id.* at 1109.

Mr. Price filed a motion to modify his sentence in 2011 under 18 U.S.C. § 3582(c)(2), based on Sentencing Guideline Amendment 750. The Amendment lowered the Sentencing Guidelines range for offenses involving certain levels of cocaine base. Mr. Price was correct—if Amendment 750 were in place at the time he was sentenced his base offense level for the drug offenses would have been four points lower. But we found Mr. Price was not eligible for a sentence reduction because his sentence length was based on the cross reference for first-degree murder instead of the drug quantity. *See United States v. Price*, 486 F. App'x 727, 732 (10th Cir. 2012) (unpublished).

In 2019, two decades after Mr. Price's initial convictions, he moved for a sentence reduction under the First Step Act. He argues that his sentence can be reduced because the new statutory framework requires no minimum quantity of cocaine base. Though true, the district court found that Mr. Price's Sentencing Guideline range does not change because his life sentence is driven by the first-degree murder cross-reference. The court concluded that Mr. Price's motion

6

would not actually reduce his length of incarceration, and thus ruled that Mr. Price lacked standing for a sentence reduction.

## II.  Analysis

Mr. Price contends he is eligible for, and has standing to request, a sentence reduction under the First Step Act.  Because the Sentencing Guidelines are now advisory, he argues that the district court has the legal authority to vary from the Guideline range—even for the cross reference to first-degree murder—by relying on any applicable sentencing factors in 18 U.S.C. § 3553(a).  Mr. Price thus claims that the district court could modify his life sentences to shorter terms, resulting in a shorter sentence.

We review the grant or denial of a First Step Act motion for abuse of discretion.  *See United States v. Mannie*, 971 F.3d 1145, 1155 (10th Cir. 2020).  But if, as here, the issue presented is a jurisdictional question then we review de novo.  *United States v. Baker*, 769 F.3d 1196, 1198 (10th Cir. 2014).

### A.  Statutory Eligibility

Congress passed the Fair Sentencing Act of 2010 to reduce the disparity in treatment of cocaine base and powder cocaine offenses.  Congress made the Fair Sentencing Act apply retroactively for these offenses when it passed the First Step Act in 2018.[2]  "An offender is eligible for a sentence reduction under the

---

[2]  Section 404 of the First Step Act authorized district courts to impose reduced sentences for defendants convicted of a "covered offense," which the Act defined as "a violation of a Federal criminal statute, the statutory penalties for which

First Step Act only if he previously received 'a sentence for a covered offense.'"
*Terry v. United States*, 141 S. Ct. 1858, 1862 (2021).  The key to eligibility for a
sentence reduction under the First Step Act is the offense of conviction, as
opposed to the "underlying conduct."  *United States v. Broadway*, 1 F.4th 1206,
1208 (10th Cir. 2021).

An offender with an eligible conviction has standing to challenge a
sentence under the First Step Act "[a]s long as it is possible for the court to grant
some actual [sentence] reduction."  *Mannie*, 971 F.3d at 1153 n.9.  But "if
reducing an offender's sentence under the 2018 [First Step Act] does not have the
effect of actually reducing the offender's length of incarceration, then the court
cannot redress the offender's injury under the [Act].  If the court cannot redress
the offender's injury, then the offender does not have standing, a live controversy
is not present, and the court does not have jurisdiction."  *Id.* at 1153; *see also*
*United States v. Ellis*, 859 F. App'x 276, 279 (10th Cir. 2021) (same); *United*
*States v. Carrillo*, 2021 WL 5764843, *1 (10th Cir. Dec. 6, 2021) (unpublished)
("If it becomes impossible at any point for a court to grant effective relief, then
the injury is no longer redressable, and the court loses jurisdiction over the
claim.").

---

were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was
committed before August 3, 2010."  First Step Act of 2018, Publ. L. No. 115-391,
§ 404, 132 Stat. 5194, 5222 (2018).

In *Mannie*, we found that a defendant with a conviction eligible for a sentence reduction under the First Step Act nonetheless did not have standing for his request. *See Mannie*, 971 F.3d at 1153; *see also Ellis* 2021 WL 2224357, at *2. The defendant had concurrent sentences where one offense was eligible for a reduction but the other was not. *See Mannie*, 971 F.3d at 1153. Because a reduction on only the eligible conviction would not actually reduce the length of the defendant's incarceration, we found that he did not have standing. *Id.*

In the present case, both parties agree that Mr. Price is statutorily eligible for retroactive application of the Fair Sentencing Act. Mr. Price was originally sentenced under 21 U.S.C. § 841(b)(1)(A), which only applies where the defendant is charged with a specific drug quantity. But the Fair Sentencing Act requires that Mr. Price be sentenced under § 841(b)(1)(C) with a maximum sentence of twenty years because his superseding indictment contained no drug quantity. *See Price*, 265 F.3d at 1108 (finding that Mr. Price's life sentences pursuant to § 841(b)(1)(A) were plain error and holding that "Defendant should have been sentenced under § 841(b)(1)(C), which provides for a maximum sentence of twenty years for each of Defendant's seven narcotics convictions").

Although we have statutory jurisdiction to entertain Mr. Price's First Step Act motion, the issue in this case concerns constitutional standing. *See Mannie*, 971 F.3d at 1152. Mr. Price alleges an injury of ongoing incarceration, thus he only has constitutional standing if the sentencing court has the power to actually reduce his sentence. *Id.* at 1153.

9

### B. *Sentencing Guidelines*

Mr. Price can only obtain a reduced sentence if the Sentencing Guidelines do not require a mandatory life sentence for his murder cross-reference. At the time of Mr. Price's sentencing in 1998 the Guidelines were mandatory, and the sentencing court did not have discretion to impose a sentence shorter than life. In 2005, the Supreme Court declared the Guidelines to be "effectively advisory," but applied this change only to cases finalized after January 12, 2005. *United States v. Booker*, 543 U.S. 220, 245 (2005). The question is whether the now-advisory Sentencing Guidelines mandate a life sentence for Mr. Price during First Step Act sentence modification proceedings.

Turning first to the text of the applicable sentence-modification statute, 18 U.S.C. § 3582, three sub-sections are relevant to answer this question: (c)(1)(A) (*e.g.*, compassionate release), (c)(2) (*e.g.*, retroactive Guideline amendments), and (c)(1)(B) (*e.g.*, the First Step Act).[3]

---

[3] The full text of 18 U.S.C. § 3582(c) reads:

**(c) Modification of an Imposed Term of Imprisonment.** — The court may not modify a term of imprisonment once it has been imposed except that —

**(1)** in any case —

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

Sections 3582(c)(1)(A), and (c)(2) explicitly require that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A), (c)(2). But sentence modifications under the First Step Act operate through 18 U.S.C.

> earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction; or
> >
> > **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> **(B)** *the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and*
>
> **(2)** in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c) (emphasis added).

11

§ 3582(c)(1)(B), which does not have the same requirement. *See United States v. Brown*, 974 F.3d 1137, 1144 (10th Cir. 2020) (concluding that "the First Step Act operates through § 3582(c)(1)(B)"). Thus, no policy statements from the Sentencing Commission limit a district court's discretion when considering a sentence reduction under the First Step Act.

The Supreme Court's recent opinion in *Concepcion v. United States* supports this conclusion. *See* 142 S. Ct. 2389, 2398 (2022). In *Concepcion*, the Court held that a district court's sentencing discretion is restricted "only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence." *Id.* Importantly, the Court held that this discretion applies to both initial sentencings and sentence modification hearings. *Id.* at 2393 ("The discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings.").

As an example of congressional limitations on a district court's sentencing discretion, the Court noted that 18 U.S.C. § 3582(c)(2) only allows reductions that are consistent with applicable Guideline policy statements. *Id.* at 2401. But as we said previously, § 3582(c)(1)(B) does not incorporate policy statement guidance. Thus, district courts are not limited by the Sentencing Guidelines for sentence modifications under the First Step Act and § 3582(c)(1)(B) because Congress has not expressly limited the district court's discretion in these cases. *See id.* ("Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing

12

discretion."). In other words, a district court may vary below the Guidelines during a First Step Act sentencing hearing at its discretion. *Id.* at 2402 n.6. (holding that district courts considering a First Step Act sentence modification may "consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark").

In sum, we conclude the district court has discretion to reduce Mr. Price's sentence under the First Step Act. Mr. Price was not separately charged and convicted of murder—instead, the murder enhancement is wholly subsumed within the covered drug offenses.

In response, the government contends that U.S.S.G. § 1B1.10 is a relevant policy statement that forecloses a sentence reduction for Mr. Price. Section 1B1.10 provides that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) to a term that is less than the minimum of the amended Guideline range." But § 1B1.10 applies only to sentence modifications under 18 U.S.C. § 3582(c)(2), not subsection (c)(1), and thus does not limit a district court's discretion during a First Step Act sentence reduction.

The government also contends that all cases finalized before *Booker* must treat the Guidelines as mandatory. *See Booker*, 543 U.S. at 245 (declaring the Guidelines "effectively advisory"). The government cites a variety of Supreme Court and Tenth Circuit cases for this argument. But these cases rely on different

13

statutes, not on § 3582(c)(1)(B).  And, moreover, the Supreme Court's decision in *Concepcion* effectively forecloses this argument because a district court's sentencing discretion is restricted "only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence."  142 S. Ct. at 2398.

Resisting this analysis, the government relies on *Dillon v. United States*, 560 U.S. 817 (2010), where the Court held that a defendant resentenced under 18 U.S.C. § 3582(c)(2) must be sentenced within the Guideline range because of the limitation of U.S.S.G. § 1B1.10.[4]  The Court reasoned that reducing a sentence under § 3582(c)(2) is not a resentencing procedure and thus the Sentencing Commission's policy statement can be mandatory because it is not governed by *Booker*.  *See id.* at 825–26, 828.  But, in the present case, Mr. Price is asking for a sentence reduction under a different subsection of the statute, § 3582(c)(1)(B).  Mr. Price is thus not subject to the limitations of U.S.S.G. § 1B1.10—as we have said, Congress has imposed no special limitations on the district court's discretion in First Step Act cases.  *See Concepcion*, 142 S. Ct. at 2396; *see also United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021) (finding that in First Step Act cases "we ask courts to make substantially more robust

---

[4]  In doing so, the Court addressed a defendant's Sixth Amendment rights to have a jury find facts that enhance his sentence and held that the defendant's Sixth Amendment rights were not violated when the district court considered a reduction only within the amended Guidelines range.  *Id.* at 828–29.  In the Court's words: "Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."  *Id.* at 826.

resentencing decisions than in § 3582(c)(2) proceedings" which may result in a new sentence "and therefore rest between an initial or plenary sentencing hearing and a limited modification").[5]

Similarly, the government cites *United States v. Hald*, 8 F.4th 932 (10th Cir. 2021), where the defendant was seeking a sentence modification pursuant to 18 U.S.C. § 3582(c)(1), the compassionate release statute. In *Hald*, we held that compassionate release sentence modifications "do not implicate the interests identified in *Booker*." *Id.* at 944.[6] But that case invoked different statutory requirements than a First Step Act sentence modification: compassionate release requires consistency with the policy statements, but sentence modifications under the First Step Act do not.

---

[5] The government cites multiple other cases that address sentence modifications under 18 U.S.C. § 3582(c)(2). *See, e.g.*, *United States v. Rhodes*, 549 F.3d 833, 835, 839–40 (10th Cir. 2008); *United States v. Doublin*, 572 F.3d 235, 237–38 (5th Cir. 2009) (citing cases). These cases are not relevant to Mr. Price's situation because Mr. Price seeks a sentence modification under 18 U.S.C. § 3582(c)(1)(B), not (c)(2).

[6] This case addresses the order in which a district court must resolve the compassionate release requirements. *See Hald*, 8 F.4th at 946. 18 U.S.C. § 3582(c)(1)(B)—the section applicable to Mr. Price's appeal—requires that the court "first address whether the defendant's guideline range has been changed by a postsentencing amendment." *Id.* But § 3582(c)(1)(A)—the section relevant to the *Hald* defendants—allows the court to consider compassionate release factors in any order. *Hald*'s holding regarding order of requirements is not relevant to the retroactivity of the mandatory Sentencing Guidelines. And in *Hald* we also reiterated that the policy statement, § 1B1.13, is inapplicable to § 3582(c)(1)(A) motions filed directly by defendants. *Hald*, 8 F.4th at 949 (citing *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021)).

Finally, the government relies on *United States v. Bellamy*, 411 F.3d 1182 (10th Cir. 2005), where we concluded that "*Booker* does not apply retroactively to initial habeas petitions." *Id.* at 1186. More specifically, we found that "*Booker* does not apply retroactively on collateral review, and [defendant's] claim may not be brought in this initial habeas review under 28 U.S.C. § 2255." *Id.* at 1188.[7] *Bellamy* misses the mark because Mr. Price is not requesting collateral review. Mr. Price is seeking a sentence modification under the Fair Sentencing Act and First Step Act—two congressional attempts to resolve the sentencing discrepancy between crack and powder cocaine that are independent of habeas proceedings.[8] Mr. Price is eligible for a sentencing reduction under these two statutes.

In short, the government cites cases that address different statutes—or different sub-sections of the same statute—and are at odds with the clear language of 18 U.S.C. § 3582(c)(1)(B), which does not limit a district court's discretion during a First Step Act sentence modification. *See Concepcion*, 142 S. Ct. at 2402 ("Nothing in the text and structure of the First Step Act expressly, or

---

[7] *Bellamy*'s introduction says that "*Booker* does not apply retroactively to criminal cases that became final before its effective date of January 12, 2005." *Bellamy*, 411 F.3d at 1184. But this statement is limited to collateral review, for the reasons discussed in the opinion. *Id.* at 1188.

[8] Habeas cases are of an entirely different nature, involving the issue of whether a sentence was imposed in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2255(a).

even implicitly, overcomes the established tradition of district courts' sentencing discretion.").

Accordingly, we find that the district court is not bound by the pre-*Booker* mandatory Guidelines in a First Step Act sentence modification.  *Id.*

### C. Constitutional Standing

Based on these principles, the district court was not *required* to impose a life sentence for Mr. Price's murder cross-reference because the Sentencing Guidelines are not mandatory.  In other words, the district court has discretion to vary below the Guideline range for first-degree murder and sentence Mr. Price to less than life.  Mr. Price has a redressable injury and thus has constitutional standing.  *See Mannie*, 971 F.3d at 1153 ("If the court cannot redress the offender's injury, then the offender does not have standing, a live controversy is not present, and the court does not have jurisdiction.").

The government counters that Mr. Price's murder cross-reference is functionally equivalent to a concurrent sentence and he is thus ineligible for a sentence modification under the First Step Act.  It points to *Mannie*, where we held that when "an offender has been sentenced concurrently, the court can only redress the ongoing incarceration to the extent that some portion of the incarceration is solely dependent on the sentence of the crack cocaine offense that might be reduced under the [First Step Act]."  *See id.*  But Mr. Price's argument aligns with this holding because his incarceration is "solely dependent" on sentences for cocaine offenses.  *Id.*  And Mr. Price's sentences "might be

17

reduced" because they do not run concurrently to an undischarged sentence of the same length, as was the situation in *Mannie*. *Id*. Mr. Price's sentences "might be reduced" because they were imposed under mandatory Sentencing Guidelines that are now advisory and can now be reconsidered in light of any applicable factors contained in 18 U.S.C. § 3553(a). In cases where we ruled that a movant did not have standing for a First Step Act claim, the movant had multiple concurrent sentences of the same length with one count eligible for sentence reduction and another count ineligible. *See id*. at 1152; *Ellis*, 859 F. App'x at 280. This case is not comparable to that situation.

Finally, the government also relies on *Ellis*, 859 F. App'x at 279. In *Ellis*, the defendant's cocaine convictions were eligible for a First Step Act reduction, but his methamphetamine conviction was not eligible. *Id*. Thus, the district court lacked the authority to actually reduce the defendant's period of incarceration. *Id*. Mr. Price's case is different because his sentence length is determined by a conviction that is eligible for a sentence reduction under the First Step Act, unlike a concurrent sentence for a separate, ineligible offense.

In summary, Mr. Price is eligible for a sentence reduction under the First Step Act and has standing to bring this argument because the district court may actually reduce his sentence. Accordingly, the district court must consider Mr. Price's motion for a sentence modification under the First Step Act.

18

### III.  Conclusion

For the foregoing reasons, we **REVERSE** the district court and **REMAND** the case for reconsideration consistent with this opinion.